# STATE OF MICHIGAN

# COURT OF APPEALS

NEWCOR, INC.,

        Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

        Defendant-Appellee.

UNPUBLISHED
December 18, 2014

No. 317702
Court of Claims
LC No. 12-000027-MT

Before: M. J. KELLY, P.J., and CAVANAGH and METER, JJ.

PER CURIAM.

Plaintiff appeals as of right from a trial court order that granted summary disposition to defendant pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). The dispute between the parties concerns the amount of tax plaintiff owed under the Single Business Tax Act (SBTA), MCL 208.1 *et seq*.,[1] for the tax years 2003 through 2006. Defendant assessed plaintiff additional taxes it determined plaintiff owed, and plaintiff challenged the assessment in the Court of Claims. We affirm.

## I. FACTUAL BACKGROUND

Plaintiff is a holding company that oversees eight different subsidiaries, all of which are involved in manufacturing for the automotive and heavy truck industry. Plaintiff provides administrative services and centralized functions for the subsidiaries.

Plaintiff was selected for a SBTA audit for the years 2003 through 2006. While comparing plaintiff's state tax returns with its federal returns and internal books, the auditor noticed that plaintiff had characterized approximately $25 million as "management fees" in its internal books, included virtually all of this as income on its federal return, but had not included it as gross receipts on its state return. Plaintiff claimed that this amount did not need to be

---

[1] This act was repealed for tax years that begin after December 31, 2007. 2006 PA 325. However, the repeal did not affect the enforcement of the tax for previous years, and "[t]he obligation of taxpayers and the state for taxes levied or collected on business activity on or before December 31, 2007 is affirmed." MCL 208.153.

reported on its state return because it was "reimbursement costs" and, therefore, was exempted from "gross receipts" under MCL 208.7(3)(b). The auditor determined that plaintiff did not have sufficient records to conclusively establish that the $25 million met the statutory requirements of MCL 208.7(3)(b) and added this amount back into plaintiff's gross receipts.

The auditor also noticed that plaintiff had repurchased some of its outstanding bonds in 2004 and 2005 for less than face value, realizing a gain that was reported as income in its federal return. It was deducted, however, by plaintiff from its tax base on its state filing. Plaintiff claimed that this gain was interest income that was allowed to be deducted from its tax base under MCL 208.9(7)(b). The auditor determined that plaintiff did not have sufficient records to conclusively establish that the gain was interest income as defined in MCL 208.9(7)(b) and added this amount back into plaintiff's tax base.

Plaintiff filed a complaint in the Court of Claims challenging the reassessment. The first count claimed that defendant incorrectly disallowed plaintiff to deduct the $25 million in management fees from its gross receipts. The second count claimed that defendant incorrectly disallowed plaintiff to deduct the gain realized on the bond purchases from its tax base. The third count alleged defendant violated plaintiff's equal protection rights in its audit and assessment.

After the initial hearing on defendant's motion, the trial court granted defendant's motion with respect to Count I (the management fees) and Count III (the equal protection claim). Several days after the hearing, the court sua sponte reversed its decision with respect to Count I. Defendant filed a motion for reconsideration, which was denied. Defendant then filed a motion to revise, arguing that the trial court was under the mistaken assumption that discovery was ongoing, when in fact discovery had closed. The trial court granted this motion and another hearing on the merits of defendant's motion was held. During the second hearing, the trial court stated that it had been under the incorrect assumption that discovery was ongoing, and that this assumption underlay its reversal of the grant of summary disposition on Count I. The trial court then granted defendant's motion on all counts.

## II. STANDARD OF REVIEW

"This court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

## III. ANALYSIS

"A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden*, 461 Mich at 120. The court considers affidavits, pleadings, depositions, admissions, and other evidence in the light most favorable to the non-moving party. *Id.* When the evidence presented "fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id.* "A litigant's mere pledge to establish an issue of fact at trial cannot survive summary disposition under MCR 2.116(C)(10)." *Maiden*, 461 Mich at 121. A reviewing court must consider the "substantively admissible evidence actually proffered in opposition to the motion." *Id.*

When interpreting provisions of the tax laws, "the power to tax must be expressly stated, not inferred." *Menard v Dep't of Treasury*, 302 Mich App 467, 472; 838 NW 2d 736 (2013). Nonetheless, "[t]axation is the rule, and exemptions are the exception." *Id*. at 473. "[S]tatutory exemptions are strictly construed against the taxpayer." *Id*.

## A. THE EXEMPTION OF THE MANAGEMENT FEES FROM GROSS RECEIPTS

The SBTA defines the term "gross receipts" as "the entire amount received by the taxpayer from any activity whether in intrastate, interstate, or foreign commerce carried on for direct or indirect gain, benefit, or advantage to the taxpayer or to others . . . ." MCL 208.7(3). The act then exempts certain items from "gross receipts," such as:

> (b) Amounts received by the taxpayer as an agent solely on behalf of the principal that are expended by the taxpayer for any of the following:
>
> * * *
>
> (*ii*) The performance of a service by a third party for the benefit of the principal that the taxpayer has not undertaken a contractual duty to perform. [MCL 208.7(3).]

Michigan tax laws also state that a taxpayer must "keep accurate and complete records necessary for the proper determination of tax liability as required by law or rule of the department." MCL 205.28(3). Because "[s]tatutes that address the same subject matter or share a common purpose are *in pari materia* and must be read collectively as one law, even when there is no reference to the other," *Menard*, 302 Mich App at 472, the provisions of the SBTA must be interpreted consistently with the provisions of the tax laws that require taxpayers to maintain proper records. If the taxpayer maintains insufficient records, defendant has the power to assess the taxpayer on the basis of the records that the taxpayer does maintain. *Vomvolakis v Dep't of Treasury*, 145 Mich App 238, 244-245; 377 NW2d 309 (1985).

Plaintiff claims that it is entitled to exclude from its tax base the $25 million in management fees that it received from its subsidiaries because those fees were merely reimbursement for amounts that plaintiff had already paid third parties who performed services for the subsidiaries. Defendant does not dispute that plaintiff would be entitled to the exemption if the underlying transactions between plaintiff, its subsidiaries, and third parties were as plaintiff claims and could be supported by plaintiff's internal records. However, defendant argues that in order for plaintiff to exclude the $25 million in management fees under MCL 208.7(3)(b)(*ii*) it must have documentary evidence establishing (1) that the relationship between plaintiff and its subsidiaries is what plaintiff says it is, (2) that the amount it wishes to exempt was expended on behalf of a principal, and (3) that the amount it wishes to exclude was received from the principal solely as a reimbursement. We agree.

The records that defendant examined during the audit showed that plaintiff included the $25 million as management fees in its internal books and that it reported this amount as income on its federal return. On the basis of these records, defendant concluded that this $25 million

met the definition of gross receipts that were not exempt under MCL 208.7(3)(b)(*ii*) because there was no other record or information presented.

During discovery plaintiff submitted two single-sided sheets of paper labeled "P&L Statement," and in response to defendant's motion for summary disposition plaintiff submitted a large stack of documents referred to as intercompany billing statements. Plaintiff asserts that its CEO will testify and explain how these records show that the $25 million of management fees meets the exemption language in MCL 208.7(3)(b)(*ii*). However, a motion for summary disposition under MCR 2.116(C)(10) is a test of the complaint's factual sufficiency. *Maiden*, 461 Mich at 120. It is not sufficient for plaintiff to promise its CEO will provide such testimony at trial. Rather, plaintiff was required to submit some form of admissible evidence, such as a sworn affidavit, "at the time of the motion." *Id*. at 120-121. Plaintiff did submit an affidavit from its CEO, but it merely uses conclusory terms that mirror the allegations made in its complaint that the documents show it is entitled to exempt the $25 million from gross receipts. This is not sufficient to survive a motion for summary disposition under MCR 2.116(C)(10). See *Maiden*, 461 Mich at 120-121.

The records also cannot be said to speak for themselves. The intercompany billing statements have no explanations regarding how they relate to the $25 million recorded as management fees in plaintiff's internal records and on plaintiff's federal tax return. The "P&L Statement" has no explanation, other than conclusory statements, regarding how it relates to the $25 million recorded as management fees in plaintiff's internal records and on plaintiff's federal tax return.

## B. THE DEDUCTION OF THE GAINS REALIZED FROM THE BOND PURCHASE FROM PLAINTIFF'S TAX BASE

MCL 208.9(7)(b) states, in relevant part, that a taxpayer may "[d]educt the following, to the extent included in arriving at federal taxable income: . . . [a]ll interest except amounts paid, credited or reserved by an insurance company as amounts necessary to fulfill the policy and other contract liability requirements . . . ." The Michigan Supreme Court has defined interest as "compensation allowed by law or fixed by the respective parties for the use or forbearance of money, 'a charge for the loan or forbearance of money,' or a sum paid for the use of money, or for the delay in payment of money." *Town & Country Dodge, Inc v Dep't of Treasury*, 420 Mich 226, 242; 362 NW2d 618 (1984), quoting *Balch v Detroit Trust Co*, 312 Mich 146, 152; 20 NW2d 138 (1945).

Plaintiff argues that when it bought back some of its own debt instruments at a discount, the gain it realized on this should not be included in its tax base because it is interest income. Plaintiff claims that this is interest income because by purchasing the bonds at a discount, plaintiff paid less interest than it otherwise would have, had it simply kept paying on the bonds at their face value. Plaintiff argues that this savings or gain should be considered interest income.

*Town & Country* is instructive. At issue in *Town & Country*, see 420 Mich at 239, was whether portions of interest received by financial institutions from the monthly payments of automobile purchasers that was then refunded to the dealer who sold the automobile was interest income to the car dealer. The Michigan Supreme Court held that just because interest had to be

credited on the dealer's accounting books as an "interest refund," this did not mean the amount could be deducted as interest income under MCL 208.9(7)(b). *Town & Country*, 420 Mich at 244. In other words, just because the money was interest in the hands of the financial institution did not mean that it was interest in the hands of the dealers. *Id*. "In the ordinary sense of the word, money paid as interest does not retain that characteristic (of being interest) unless it too, when it is returned or rebated, is paid for the use of or forbearance or delay of use of money." *Id*. Here, plaintiff did not receive this gain in exchange for the use of or forbearance or delay of use of money. It received this gain because by essentially pre-paying its debt obligations at a discount, it saved with respect to the total amount of interest it otherwise would have had to pay. Even if the money was reflected as interest income on plaintiff's balance sheet, the principles remain the same. See *id*. Reversal is unwarranted.

Affirmed.

/s/ Michael J. Kelly
/s/ Mark J. Cavanagh
/s/ Patrick M. Meter